IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADNAN AWAD, | ) | CASE NO. 4:25-CV-02751-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| ACTING DIRECTOR (ERO), ICE | ) | MAGISTRATE JUDGE |
| DETROIT FIELD OFFICE, et al.; | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondents. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2. Before the Court is the Petition of Adnan Awad ("Awad" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. No. 1), the Answer/Return of Writ and Motion to Dismiss (Doc. No. 8.), and Petitioner's Traverse (Doc. No. 9). Also pending is Petitioner's Request for Expedited Consideration and Status Update (Doc. No. 3.) Awad is being held in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Northeast Ohio Correctional Center. (Doc. No 1 at 1, 3; Doc. No. 8 at 2.)

For the following reasons, the undersigned recommends that the Court GRANT Awad's Petition and ORDER Respondent to provide Awad with a bond hearing under 8 U.S.C. § 1226(a). Petitioner's Request for Expedited Consideration and Status Update (Doc. No. 3) is DENIED AS MOOT.

## I. Background

Awad arrived in the United States on a V-2 nonimmigrant visa on August 8, 2001. (Doc. No. 8 at 2.) On December 4, 2007, his status changed to lawful permanent resident. (*Id*.)

1

On January 9, 2018, Awad was convicted in this Court of RICO Conspiracy under 18 U.S.C. § 1962(d) and Conspiracy to Commit Money Laundering under 18 U.S.C. § 1956(h) involving funds greater than $1 million. (*Id*.) Awad was sentenced to thirty-six months in prison. (*Id*.)

On August 4, 2020, Awad received a Notice to Appear ("NTA"), placing Awad in removal proceedings based on the above convictions. (*Id*.) The NTA charged Awad with removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") for having been convicted of aggravated felonies as defined in INA Sections 101(a)(43)(D), (J), and (U). (*Id*.)

On September 14, 2020, an immigration judge ordered Awad removed from the United States. (*Id*.) Awad did not appeal the decision to the Board of Immigration Appeals. (*Id*.) Pursuant to the order of removal, ICE is seeking authorization from Israeli authorities and Palestinian authorities to permit Awad to travel through Ben Gurion International Airport in Isreal and then on to the Palestinian Territories (West Bank). (Doc. No. 1-3 at 3.)

On October 8, 2021, while serving his criminal sentence, Awad was transferred to ICE ERO custody and detained at the Eden Detention Center in Eden, Texas. (Doc. No. 8 at 2.)

On December 30, 2021, Awad was released pursuant to an Order of Supervision ("OSUP"). (*Id*.)

On June 4, 2025, Awad was taken into custody by ICE ERO following the determination that it was appropriate to enforce the removal order. (*Id*.)

On August 27, 2025, ERO requested a travel document. (*Id*.)

On September 4, 2025, ICE completed the 90-day Post Order Custody Review and served Awad with a Decision to Continue Detention, explaining that he posed a significant flight risk, and ICE requested a travel document from the Isreal Embassy, expected a travel document to be issued soon, and his removal to occur within the foreseeable future. (*Id*. at 2-3.) The Decision to Continue Detention further explained

2

that if he had not been removed within the next 90-days that jurisdiction of the custody decision would be transferred to the ICE Headquarters (ERO Removal Division) in Washington, DC. (*Id*. at 3.)

On October 27, 2025, ICE conducted a panel interview with Awad to further review his custody status and referred the case to ICE HQ Removal and International Operations ("RIO"). (*Id*.) The panel recommended Awad remain detained. (*Id*.) This recommendation remains pending review by ICE HQ RIO. (*Id*.)

On January 28, 2026, ICE HQ RIO notified ICE ERO Detroit (Cleveland) that it expects to receive special transit permission from the Government of Isreal soon based on the timing of the August 25, 2025 request for a travel document. (*Id*.)

As of March 2, 2026, ICE HQ RIO indicated it sent removal flights to/through Isreal on January 20, 2026, and February 1, 2026. (*Id*. at 4.) ICE denied any institutional barriers that would prevent it from removing Awad in the reasonably foreseeable future. (*Id*.)

## II. Law and Analysis

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Under 28 U.S.C. § 2241, federal courts may grant habeas corpus relief to persons who are "in custody in violation of the Constitution or laws or treaties of the United States." The writ extends to noncitizens who are in custody for immigration-related matters. *Rigueiro-Orruela v. Dir. of the Detroit ICE Field Off.*, No. 4:25-CV-02340-CAB, 2026 WL 763792, at *2 (N.D. Ohio Mar. 18, 2026), citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

Petitioner is detained under 8 U.S.C. § 1231, which provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). This is known as the "removal period." *Rigueiro-Orruela*, 2026 WL 763792, at *2. "During

3

the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Typically, once the removal period expires, rather than being detained, the alien is "subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). But "[a]n alien ordered removed who...has been determined by the Attorney General to be a risk to the community...may be detained beyond the removal period." *Id.* § 1231(a)(6).

Awad's 90-day removal period began June 4, 2025, when he was taken into ICE custody. *See id.* § 1231(a)(1)(B)(iii). It expired on September 2, 2025. On September 4, 2025, ICE conducted a 90-day Post Order Custody Review and served Awad with a Decision to Continue Detention. (Doc. No. 8-2.) The Decision to Continue Detention was based on Awad posing a significant flight risk and ICE's expectation that removal was likely to occur "in the reasonably foreseeable future." (*Id.*) Thus, Awad may be detained beyond the 90-day removal period under § 1231(a)(6).

The Supreme Court has declared the government may not extend detention beyond the 90-day removal period "indefinitely" under § 1231(a)(6). *See Zadvydas,* 533 U.S. at 682. The Court "read an implicit limitation into the statute...in light of the Constitution's demands" that "limits an alien's post-removal detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. Detention of a noncitizen subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish removal. *Id.* at 701. As the Court explained:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. The 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

4

*Id*. Additionally, "the risk of the alien's committing further crimes" is "a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

If the government fails in its obligation to offer sufficient evidence to rebut the noncitizen's showing, the noncitizen must be released on conditions of supervision. *Id.* at 699-700. Importantly, a petitioner need not show that removal will prove impossible, only that there is no reasonable likelihood of removal in the foreseeable future. *Id.* at 702.

Awad's six-month period expired on December 4, 2025. As of the date of this Report and Recommendation, Awad remains in ICE custody at the Northeast Ohio Correctional Center. *See* Online Detainee Locator System, http://locator.ice.gov/odls/ (search with A-number and country of birth of Isreal) (last accessed April 27, 2026). Thus, Awad's detention is outside the 6-month period where it is presumptively reasonable under *Zadvydas*.

Turning to whether Awad has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, in his Petition, Awad contends "ICE has a demonstrated history of inability to remove him" based on his 2021 detention and release due to ICE's inability to obtain travel documents at that time. (Doc. No. 1-3 at 5.) Awad asserts during the current detention ICE has not obtained travel documents and at the time of filing, no flight was scheduled. (*Id*.) Awad argues "a generalized expectation that documents might arrive is not evidence of a significant likelihood of removal in the reasonably foreseeable future." (*Id*.) Awad points out that in September 2025 ICE expected travel documents "soon" yet still has none. (*Id*. at 6.) Awad states he fully cooperated with ICE to prepare the appropriate consular paperwork, and "the prolonged absence of documents" is due to "third-party consular/government action and authorization" which is "strong evidence" that removal is not significantly likely in the foreseeable future. (*Id*.)

Respondent argues Awad fails to meet his initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (Doc. No. 8 at 8.) Respondent cites several cases that he argues are analogous to the instant matter and support detention of Awad. (*Id*. at 8-9, *see Salem v. Core Civic Warden*, No. 4:25-CV-02058-PAB, 2026 WL 194156, at *2 (N.D. Ohio Jan. 26, 2026) (the Court found there was evidence that ICE had removed individuals to the Palestinian territories, and there was no reason to believe that ICE will be unable to continue doing so; *Jiang Lu v. U.S. ICE*, 22 F. Supp. 3d 839, 843 (N.D. Ohio 2014) (the court found petitioner failed to meet the initial *Zadvydas* burden because ICE submitted evidence it was working with the government of China to procure a travel document despite petitioner being in detention for eleven months; *Li Qin Dong v. Adducci*, No. 11-11608, 2011 WL 2619063, at *3 (E.D. Mich. June 29, 2011) (the court found petitioner's removal to China was significantly likely to occur in the reasonably foreseeable future where a travel document was requested from China and the Consulate of China in Chicago informed ICE that it had sufficient information and was awaiting confirmation from the provincial authority in China before issuing the travel document.)

Respondent asserts that Petitioner here, as in these cases, does not provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. (Doc. No. 8 at 10.) Respondent states a delay by a foreign government in issuing travel documents does not satisfy a detainee's *Zadvydas* burden. (*Id*., citing *Manjulaben v. Ice*, No. 4:25-CV-02252, 2025 WL 2977713, at *2 (N.D. Ohio Oct. 22, 2025).) Respondent argues that here, as in the cited cases, ICE has requested travel documents from Isreal to return Awad to the Palestinian territories, which is enough to show removal will occur in the reasonably foreseeable future. (*Id*. at 11.)

In his Traverse, Awad contends he has made a *prima facie* showing that removal is not significantly likely in the reasonably foreseeable future. (Doc. No. 9 at 1.) Awad argues that ICE has a history of being unable to remove him, as evidenced by his detention and release in 2021 because ICE could not secure travel

6

documents. (*Id*. at 2.) Awad states the same issues exist now, where ICE has requested a travel document, but none has been issued. (*Id*.) Awad contends ICE expected travel documents "soon" in September 2025, and now, more than six months later, ICE is still waiting on travel documents. (*Id*.) Awad argues the "generalized expectation that documents *might* arrive is not evidence of a significant likelihood of removal in the reasonably foreseeable future." (*Id*., emphasis original.) Awad contends removal requires the cooperation of two foreign entities, the Government of Isreal and the Palestinian Authority, neither of which has issued the required documents. (*Id*. at 3.) Awad states ICE operated two charter flights to the Palestinian territories via Ben Gurion Airport on January 20 and February 1, 2026, and did not include Petitioner on either flight, despite other detainees from his facility being included. (*Id*.) Awad argues that his lengthy detention strengthens his *prima facie* showing because as the period of post-removal confinement grows, the "reasonably foreseeable future" conversely shrinks. (*Id*. at 3-4, citing *Zadvydas*, 533 U.S. at 701.)

Awad argues Respondent's evidence fails to rebut his *Zadvydas* showing. (*Id*. at 4-9.) Awad contends Operation Epic Fury[1] has rendered Respondent's declaration that travel documents will be received soon and a removal flight secured obsolete. (*Id*. at 4.) Awad asserts Operation Epic Fury caused Isreal to close both its airspace and Ben Gurion Airport, and a prompted shelter-in-place notification for Isreal (including the West Bank), rendering Respondent's contention that Petitioner can be imminently removed outdated. (*Id*. at 4-5.)

Awad argues Respondent's reliance on the Shaver Declaration is misplaced. (*Id*. at 6.) Awad states the Shaver Declaration was signed on March 2, 2026, two days after the start of Operation Epic Fury, but does not mention it. (*Id*.) Awad contends the Shaver Declaration is contradicted by Shaver's own statements

---

[1] On February 28, 2026, the United States and Isreal launched joint military operations against Iran, known in the United States as Operation Epic Fury. (*U.S. Forces Launch Operation Epic Fury*, U.S. Cent. Command Press Release (Feb. 28, 2026) https://www.centcom.mil/MEDIA/PRESS-RELEASES/Press-Release-View/Article/4418396/us-forces-launch-operation-epic-fury/; *Iran Israel War 2026 Operation Roaring Lion*, Israel Defense Forces https://www.idf.il/en/mini-sites/iran-israel-war-2026/.)

to counsel that he was not aware of any more charter missions to Palestine via Isreal. (*Id*. at 7.) Awad claims Shaver's statement that he is "unaware of any institutional barriers" that would hinder removal is not sufficient to rebut Petitioner's showing. (*Id*. at 8.)

As an initial matter, courts in this circuit have found that "prolonged delays of removal, particularly when accompanied by prior failed efforts at removal and a lack of approval from the receiving country, have supported habeas relief in other cases." *Ahmad Fareez Thabateh, v. Mat King, et al.*, No. 25-CV-14018, 2026 WL 1121927, at *3 (E.D. Mich. Apr. 24, 2026), citing *Tarkhorani v. Unknown Party #1*, No. 26-231, 2026 U.S. Dist. LEXIS 29525, at *6-7 (W.D. Mich. Feb. 12, 2026) (finding good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future where (1) "ICE first attempted to remove Petitioner to Iran in 2005 but was unsuccessful"; (2) "ICE has now detained Petitioner for a second time in an effort to execute ... removal"; and (3) "ICE has been told only that its request for Iranian travel documents is 'pending' "); *see also Masheli v. Noem*, No. 25-1577, 2026 U.S. Dist. LEXIS 12007, at *9 (W.D. Mich. Jan. 22, 2026) ("The Court concludes that the fact that the government has been unsuccessfully attempting to remove Petitioner to Iran since 2007 provides a good reason to believe that there is a significant likelihood that Petitioner will not be removed in the reasonably foreseeable future.") (quotation marks and citation omitted); *Kai Yu v. Noem*, No. 26-263, 2026 U.S. Dist. LEXIS 26419, at *6-7 (W.D. Mich. Feb. 9, 2026) ("The Court concludes that the fact that the government was recently unable to provide a travel document to effect removal on a special charter flight and that the government has not received the required documentation from China despite at least two requests for such documentation provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (quotation marks and citation omitted).

In *Thabateh*, petitioner was born in the West Bank and is a citizen of Isreal. 2026 WL 1121927, at *1. He was ordered removed in 2023 and released about three months later, on supervision. (*Id*.) He was

8

detained again on June 10, 2025, to enforce the final order of removal. (*Id*.) In March 2026, the court ordered the parties to provide a status update "due to ongoing and escalated conflict in the Middle East." (*Id*. at *3.) Respondent reported obtaining a travel document for Thabateh but was unable to "schedule a flight to remove petitioner due to ongoing turmoil in the region of his removal." (*Id*.) The court concluded "that the ongoing conflict constitutes a concrete barrier to Thabateh's imminent removal and, therefore, there is no significant likelihood of removal in the reasonably foreseeable future." (*Id*.) The court also found repeated failures to remove petitioner, and no progress toward removal prior to the military conflict, supported granting habeas relief. (*Id*.)

Following this authority, the undersigned finds Awad provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. As in *Thabateh*, here, immigration officials were previously unable to remove Awad and during his current detention of nearly eleven months officials again failed to effectuate removal due to lack of proper travel documentation/approval. The lack of travel documentation and the continuing military conflict in the region present barriers that prevent removal over the reasonably foreseeable future.

The undersigned now considers whether Respondent provides sufficient evidence to rebut this showing. Respondent's evidence constitutes the Declaration of Deportation Officer Bradley Shaver. (*See* Doc. 8-1.) Shaver declares, in pertinent part, that a travel document was requested for Awad on August 27, 2025; ICE has successfully removed individuals to the Palestinian territories with "special transit permission from the Government of Isreal"; as of January 28, 2026, ICE noted it expected to "receive special transit permission from the Government of Israel soon . . ."; ICE sent removal flights to Israel on January 20 and February 1, 2026; and he is "unaware of any institutional barriers that would prevent ICE from removing the petitioner" in the reasonably foreseeable future. (*Id*., at ¶¶ 14, 17, 18, 19, 21.)

9

As the Court recognized in *Thabateh*, cases in this circuit have found assertions that a travel document was requested several months prior along with conclusory statements that removal was likely in the foreseeable future is not enough to rebut petitioner's showing. *See* 2026 WL 1121927, at *4, citing *Masheli*, 2026 U.S. Dist. LEXIS 12007 at *9-10 (the respondents failed to refute the petitioner's showing because "Respondents' sole evidence is the assertion that a travel document has been requested more than five months ago and that there is a 'significant likelihood of removal in the reasonably foreseeable future'") (citation omitted); *Tarkhorani*, 2026 U.S. Dist. LEXIS 29525 at *7 (the respondents failed to refute the petitioner's showing because "[t]here is nothing before the Court to suggest that the Iranian government is expected to issue travel documents to Petitioner in the near future ... [, or] that the process of removal to a third country will be resolved [soon]"); *Kai Yu*, 2026 U.S. Dist. LEXIS 26419 at * 7 (the respondents failed to refute the petitioner's showing because (1) "Respondents' sole evidence is the assertion that after the failed attempt to remove Petitioner ... , 'ICE Headquarters submitted an updated [travel document request] to the Chinese Embassy'"; (2) "Respondents do not indicate that they have received anything from the Chinese Embassy as of the date they filed their response"; and (3) "Respondents acknowledge that the process 'historically can be prolonged'") (citations omitted); *see also Perez*, 2025 U.S. Dist. LEXIS 249980 at *4 (the respondents essentially "fail[ed] to offer any rebuttal evidence"); *Abuelhawa*, 2025 U.S. Dist. LEXIS 203959 at *24 ("the Government fails to meet its burden where it provides only conclusory statements as to the likelihood of removal").

The undersigned concludes, as in *Thabateh,* that the ongoing military conflict, known as Operation Epic Fury/Roaring Lion, constitutes a concrete barrier to Awad's imminent removal, and, therefore, there is no significant likelihood of removal in the reasonably foreseeable future. This is further supported by the 2021 failure to remove Awad, as well as the lack of progress in obtaining a travel document even prior to the military operation. The undersigned also notes that Awad is married to a U.S. citizen, has three minor

U.S.-born children, and has fully complied with the terms of his 2021 Order of Supervision. (*See* Doc. No. 1-3 at 2, 3.) Respondent has not advanced evidence sufficient to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701.

For all the foregoing reasons, the undersigned recommends the Court GRANT Awad's Petition and ORDER Respondent to provide Awad with a bond hearing under 8 U.S.C. § 1226(a).

### V. Conclusion

For all the reasons set forth above, it is recommended that the Court GRANT Awad's Petition and ORDER Respondent to provide Awad with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of the adoption of this Report and Recommendation. Petitioner's Request for Expedited Consideration and Status Update (Doc. No. 3) is DENIED AS MOOT.

Date: May 1, 2026

    *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**